**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ROBERT HERMAN**                                                                    **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO.: 3:22-cv-138-CWR-MTP**

**KILOLO KAJAKAZI**
**Acting Commissioner of Social Security**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Robert Herman brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits and supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be affirmed and this matter be dismissed with prejudice.

## PROCEDURAL HISTORY

On October 12, 2017, Plaintiff applied for disability insurance benefits and supplemental security income at age 46, alleging that he had been disabled since April 1, 2017, due to asthma and/or chronic pulmonary disease ("COPD"), sciatica, cervical spine issues, migraines, "myocardial bridge of left descending coronary artery," "ramus intermedius branch," lower back impairment, "nonconverebral joint osteoarthritis," and depression. (Administrative Record[1] [14] at 28-34; [12] at 58-70). After the agency denied Plaintiff's claims, an Administrative Law Judge ("ALJ") conducted a hearing, and on September 8, 2021, the ALJ issued a decision finding that

---

[1] The Commissioner filed the Administrative Record in eight separate docket entries. All docket entries between [9] and [16] contain portions of the administrative record. Plaintiff and the Commissioner referenced the record utilizing different numbers; however, any reference in this Report and Recommendation will refer to the docket entries and corresponding page numbers.

Plaintiff was not disabled. ([11] at 11-29). Plaintiff then appealed the ALJ's decision to the

Appeals Council. On February 8, 2022, the Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner. ([11] at 2-7).

Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his September 8, 2021, decision, the ALJ applied the five-step sequential analysis set

forth in 20 C.F.R. § 404.1520(b)-(f)[2] and determined that Plaintiff was not disabled.  At step one,

the ALJ noted that Plaintiff has not engaged in substantial gainful activity since the alleged

disability onset date—April 1, 2017. ([11] at 13). At step two, the ALJ found that Plaintiff had

the following severe impairments: cervical and lumbar degenerative disease, COPD, and

pulmonary blebs.[3] ([11] at 13). He found that Plaintiff had the following non-severe

---

[2] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92.  The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[3] A pulmonary bleb is an "air-filled alveolar dilation less than 1 cm in diameter on the edge of the lung at the apex of upper lobe or superior segment of lower lobe; usually occurs in young people and can rupture, producing primary pneumothorax." Pulmonary bleb, *Stedman's Medical Dictionary* 106380 (Nov. 2014).

impairments: myocardial bridge,[4] coronary artery disease, hypertension, bilateral rotator cuff tendinopathy, migraine headaches, and anxiety. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix. 1. ([11] at 16-17).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[5] to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b),[6] with the following exceptions:

> [h]e can sit for 6 hours in an 8-hour workday; he can stand and/or walk for 4 hours in an 8-hour workday. He should never climb ladders, ropes, or scaffolds. He can occasionally perform other postural limitations. He should have use of a cane to ambulate. He should avoid unprotected heights and hazardous machinery, and he should avoid extreme heat, cold, wetness, and humidity. He should avoid exposure to concentrations of dust, smoke, fumes, and strong odors. He has no mental limitations.

([11] at 17).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

([11] at 26-27). At step five, however, the ALJ found that jobs existed in significant numbers in

---

[4] A bridge of cardiac muscle fibers extending over the epicardial aspect of a coronary artery. Myocardial bridge, *Stedman's Medical Dictionary* 123350 (Nov. 2014).

[5] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

the national economy which Plaintiff could perform.  Accordingly, the ALJ determined that
Plaintiff was not disabled. ([11] at 27-28).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether
there is substantial evidence to support the Commissioner's findings and whether the correct
legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382
(5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is
such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do
more than create a suspicion of the existence of the fact to be established."  *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible
evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704
(5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the
Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).
A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the
Commissioner's, "even if the evidence preponderates against" the Commissioner's decision.
*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial
evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover,
"'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial
rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)
(quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff presents four grounds for relief: (1) whether the ALJ included all of Plaintiff's functional limitations in his RFC;  (2) whether the ALJ properly considered medical opinion evidence to determine Plaintiff's ability to perform work related activities; (3) whether the ALJ failed to consider the "unanimous" medical opinions of the State Agency medical consultants in determining the severity and functionally limiting effects of the Plaintiff's symptoms; and (4) whether the ALJ carried his burden at step five of establishing the existence of alternative work that exists in significant number which the Plaintiff can perform.

**Issue 1: Plaintiff's RFC**

Plaintiff argues that the ALJ failed to include all of his functional limitations in the RFC. Plaintiff claims that the ALJ should have included additional limitations related to Plaintiff's cervical spine, heart impairments, and depression.

The ALJ retains the sole responsibility for determining an individual's RFC based on all of the relevant evidence. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995); 20 C.F.R. § 416.946(c); SSR 96–8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but may determine only whether substantial evidence is present. *See Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis v. Bowen,* 837 F.2d at 1378, 1383 (5th Cir. 1988).

*a.  Cervical Spine*

In a remarkably thorough and detailed opinion, the ALJ found that Plaintiff's severe impairments included cervical and lumbar degenerative disc disease and sciatica. ([11] at 13). In determining Plaintiff's RFC, the ALJ found that Plaintiff "has lumbar degenerative disc disease with sciatica which limits his ability to stand and/or walk, and he also has neck pain from

cervical degenerative disease which further causes pain with exertional activity." ([11] at 26).
The ALJ opined that these impairments "limit [Plaintiff's] ability to lift and carry and push and
pull to a range of light work, with an ability to lift and carry/push and pull 10 pounds frequently
and 20 pounds occasionally." ([11] at 26). The ALJ also included a cane in Plaintiff's RFC based
on the degenerative disc disease though Plaintiff admitted that he does not consistently use one.
([11] at 26, 54-55).

Plaintiff claims that the ALJ should have included additional functional limitations for
both the range of motion of his cervical spine and his ability to reach, finger, feel, push, and pull.
Plaintiff argues that the ALJ's failure to include these additional limitations was reversible error.
([18] at 8). The ALJ reviewed all relevant evidence including imaging records, physical exams,
and Plaintiff's daily activities to determine Plaintiff's RFC, and his finding regarding Plaintiff's
range of motion and ability to reach, finger, feel, push, and pull is supported by substantial
evidence.

Imaging records support the ALJ's RFC findings. On February 20, 2017, an MRI of
Plaintiff's cervical spine showed normal alignment and no acute fracture. ([16] at 54). Dr. James
Stensby compared an MRI taken on February 20, 2017 to an MRI completed in May of 2013.
([16] at 56). He found only mild C5-C6 and C6-C7 disc degenerative changes and mild left C5-
C6 uncovertebral joint osteoarthritis. A March 31, 2021, MRI of Plaintiff's cervical spine
showed disc protrusions at C5-6 on the left and C6-7 on the left but identified no cord
compression. ([16] at 252).

On September 18, 2019, x-rays showed no compression fracture or spondylolisthesis,
mild scattered lumbar spondylosis, mild to moderate degenerative disc narrowing at L5-S1, mild
facet hypertrophy in the mid to low lumbar spine, and no focal lytic or blastic lesion. ([16] at

190). On October 25, 2019, an x-ray of Plaintiff's shoulder showed no acute findings, including no acute fracture or evidence of dislocation, no joint effusion, and no suspicious osseous or soft tissue lesions. ([16] at 200).

Physical exams also support the ALJ's finding that Plaintiff has no functional limitations in the range of motion of his cervical spine and reaching, fingering, feeling, pushing, and pulling. A February 21, 2017, physical exam was mostly normal, with 5/5 muscle strength, 5/5 wrist extension and flexion, and 5/5 hand grip strength. ([16] at 89). He also had 5/5 strength in the iliopsoas,[7] quadriceps, dorsiflexion, and planta flexion. While the doctor noted that he had reduced sensation along the left C5-6 distribution and a positive Spurling[8] sign when looking to the right, he found that Plaintiff had a good gait and walked normally. ([16] at 89). On April 10, 2017, a physical exam found Plaintiff "moves all extremities 5/5 throughout with no pronator drift" and that "his sensation is intact to light touch except for the lateral aspect of his left upper extremity throughout the C6 distribution." ([16] at 91). Plaintiff's reflexes were normal.

An examination by Dr. Lewis on November 29, 2019, showed a full range of motion in Plaintiff's neck and normal motor strength in his upper and lower extremities. ([16] at 206). On February 22, 2019, Dr. Lewis examined Plaintiff and found his neck "supple" with full range of motion. ([16] at 223). He noted that Plaintiff had full motor strength in both his upper and lower extremities.

---

[7] A compound muscle, consisting of the iliacus and psoas major, that connects the spine to the lower limbs. *Dorland's Illustrated Medical Dictionary* 1155-57 (29th ed. 2000).

[8] The Spurling test is used to evaluate cervical nerve root impingement. The patient extends his neck and "rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain." Spurling test, *Stedman's Medical Dictionary* 908330 (Nov. 2014).

On February 12, 2021, an exam showed full range of motion in Plaintiff's extremities, with a normal gate, and intact sensation. ([16] at 246). While Plaintiff exhibited a limited range of motion in his cervical spine with extension and lateral rotation on March 17, 2021, a shoulder exam was normal bilaterally and he was nontender over his posterior cervical spine. ([16] at 257). Plaintiff had a positive Spurling sign on the left and a positive Tinel[9] in his right elbow, but a motor exam of his upper and lower extremities was normal. ([16] at 257-58). In April 2021, Plaintiff showed full power in all major muscle groups of his bilateral upper extremities. ([16] at 254). While Plaintiff had a positive Spurling sign and diminished sensation in his thumb, the examination of Plaintiff's shoulder was normal. ([16] at 254). A May 2021 exam showed full range of motion in Plaintiff's extremities and a normal gait. ([16] at 250).

A February 2018 consultative examination with Dr. Golzari showed normal motor strength in both of his arms, with no muscle atrophy and no joint deformity, pain, tenderness, or swelling. ([16] at 160). Plaintiff was able to open a door, button and unbutton, hold a pen and write, and hold a full cup. ([16] at 160). While Plaintiff had decreased range of motion in his neck and shoulders, his range of motion was otherwise normal. ([16] at 162). He had a normal gait, did not need an assistive device for walking, and was able to squat and get on and off the examination table.  ([16] at 161).

Plaintiff argues that the ALJ should have relied on the opinion of state medical consultant Dr. Carol Kossman, who found that Plaintiff was capable of light work but restricted him from frequent pushing and pulling with his arms and frequent reaching in all directions. However, many state agency medical consultants found no limitation in Plaintiff's range of motion of the

---

[9] Tinel sign is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve." Tinel sign, *Stedman's Medical Dictionary* 820740 (Nov. 2014).

cervical spine and reaching, fingering, feeling, pushing, and pulling which supports the ALJ's RFC finding. ([12] at 15).

Dr. Philip Matar, a state agency medical consultant, reviewed the evidence of record in October 2019 and found that Plaintiff could perform light work with no manipulative limitations. ([12] at 12-13). Dr. Madena Gibson in January of 2020 reviewed Plaintiff's records and found that Plaintiff was capable of performing light work and noted no reaching or manipulative limitations. ([12] at 42-43). As noted by the Commissioner, while a third state agency medical consultant restricted Plaintiff to a range of sedentary work, he also found no manipulative or reaching limitations. ([19] at 10; [12] at 94-96).

Additionally, Plaintiff's daily activities support the ALJ's finding that Plaintiff is not limited in the range of motion of his cervical spine and reaching, fingering, feeling, pushing, and pulling. In June of 2019, Plaintiff admitted that he drives a car, does the dishes for 30 minutes a day, and prepares complete meals every other day. ([15] at 61). At the hearing before the ALJ, Plaintiff admitted to showering himself, brushing his daughter's hair, shopping for household items, putting gas in the car, putting dishes away, and taking out the trash. ([11] at 64-69).

The ALJ's finding regarding Plaintiff's functional limitations relating to his range of motion of the cervical spine and reaching, fingering, feeling, pushing, and pulling is supported by imaging records, examinations, and Plaintiff's daily activities and is therefore supported by substantial evidence.

   b.  *Heart Impairments*

The ALJ found that Plaintiff's heart impairments were non-severe. ([11] at 14). Plaintiff claims that state agency medical consultants determined that his congenital anomalies were

severe impairments, and that the ALJ never recognized their medical opinions, explained the weight he gave to such opinions, or provided reasons for rejecting these opinions. ([18] at 9). However, the social security regulations are clear that for claims filed on or after March 27, 2017, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled" is "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(1)-(3). The regulations state that because this evidence is neither valuable or persuasive that the Commissioner "will not provide any analysis about how we considered such evidence in our determination or decision." *Id*. Accordingly, no analysis was required, and the ALJ did not err on this ground.

Moreover, the regulations require a claimant to show only *"a severe"* impairment, that is, *one* severe impairment in order to avoid a denial of benefits at step two. As such, the failure to find a particular impairment severe at step two is not reversible as long as the ALJ finds that at least one other impairment is severe. *See Allman v. Colvin*, Soc. Sec. Rep. P 15485C (10th Cir. 2016) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"); 20 C.F.R. § 404.1520(a)(4)(ii)); *see also Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) (unpub.).  Even if an impairment is found non-severe at step two, an ALJ must consider at step four, "the limiting effects of all [a claimant's] impairment(s), *even those that are not severe*, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e) (emphasis added); *see also* Social Security Ruling 96–8P, 1996 WL 374184, at *5.

The ALJ thoroughly considered Plaintiff's heart impairments in his decision:

The claimant had a computed tomography, angiography of the heart in 2013 that showed no coronary artery disease. Nevertheless, a history from a consultative

medical examiner in 2019, shows he had a history of coronary artery disease; and the examiner diagnosed it. He occasionally has chest pain and mild cardiac bridging, and he also reports shortness of breath on exertion; however, he does not take nitroglycerin, and there are no hospital stays for his cardiac problems. Dr. Lewis wrote in July 2019, that the claimant had a cardiac workup, and his Ca score (to measure coronary disease) was zero. The claimant also has a diagnosis of essential hypertension; however, this appears to be controlled with medication Amlodipine Besylate. His blood pressure at a visit to Dr. Lewis on July 31, 2019 was 122/70, and examinations do not reveal edema or evidence of involvement with other organs. Therefore none of his cardiac impairments appear to be severe.

([11] at 14). Additionally, the ALJ considered all of Plaintiff's impairments in determining the RFC, and limited Plaintiff to "only occasionally stoop, climb ramps/stairs, kneel, crouch, or crawl "due to…dizziness from his COPD and heart conditions." ([11] at 26).

The ALJ recognized Plaintiff's heart impairments, applied the appropriate standard, and incorporated any potential limiting effects from his heart impairments into Plaintiff's RFC. The ALJ's finding is supported by substantial evidence.

    *c. Depression*

The ALJ included "no mental limitations" in Plaintiff's RFC. ([11] at 17). Plaintiff argues that this is error and that depression and its limiting effects should have been included. In support of his argument, Plaintiff claims that the ALJ failed to properly consider the opinions of Dr. Jan Boggs and Bryman Williams, Ph. D. However, the ALJ considered these opinions along with the record as a whole, applied the appropriate standard to evaluate medical opinions, and his opinion is supported by substantial evidence.

Pursuant to Social Security Administration regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability,

consistency, relationship with the claimant, specialization, and other factors.[10] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how he considered the supportability and consistency factors but need not explain how he considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

A July 20, 2018, comprehensive mental status examination conducted by Dr. Jan P. Boggs at the direction of the Commissioner found that Plaintiff was "very depressed" and diagnosed him with Major Depression. ([16] at 179). The ALJ considered the opinion of Dr. Boggs but found that it was neither supported by Dr. Boggs' own findings during the examination nor consistent with the record as a whole. ([16] at 177-79). Accordingly, he found Dr. Boggs's opinion not persuasive. The ALJ explained "it appears obvious that Dr. Boggs'[s] opinion was based on the claimant's subjective statements and his personal feelings regarding what he believed to be financial problems rather than mental impairment and mental functional limitations." ([11] at 23).

The ALJ found Dr. Boggs' report to be "replete with subjective information provided by the claimant about his alleged medical and financial problems" and found it significant that Dr. Boggs interjected his thoughts based on the subjective statements of Plaintiff. ([11] at 23). The ALJ quoted the report several times in his opinion, including highlighting statements by Dr. Boggs such as "[i]t sounds as if this family has no money and is hanging on by a thread," and "[h]e and his family are about as needful as it gets." The summary and conclusions section of Dr. Boggs's mental examination report states:

---

[10] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

> Mr. Herman is no longer able to work. He lacks the strength and stamina necessary for auto repair and restoration, which has been his livelihood. He tried a manual/stacking job at Home Depot but couldn't keep up due to COPD. He has back and heart problems. He is very depressed. He is making a heart[-]rending effort to do right by his little girl. He was trying to scratch money together to buy her a Happy Meal at McDonald's. I was not going to let him walk out of here without some immediate help, so I did what I am inclined to do. I shared and he cried."

([11] at 23; [16] at 179).

During the mental examination with Dr. Boggs, Plaintiff reported no suicidal or homicidal ideation, no delusions or hallucinations, and no major issue with his temper. While Plaintiff was not able to repeat any recent memory items, Dr. Boggs found his remote recall was good and he was able to repeat five digits forward and two in reverse. Plaintiff did "okay" on grocery store arithmetic and understood daily problem-solving situations and proverbs. ([16] at 179). The ALJ explained that Dr. Boggs's opinion was neither supported by Dr. Boggs's own findings during the examination nor consistent with the record as a whole, as required by the regulations. This finding is supported by substantial evidence.

Plaintiff also argues that the ALJ should have relied on the findings of Bryman Williams, Ph. D. who found that Plaintiff had a severe mental impairment in August of 2018. In making this determination, Dr. Williams did not examine Plaintiff but considered the report of Dr. Boggs and found that Plaintiff had no limitation in interacting with others, mild limitations in adapting and managing oneself and understanding, remembering, and applying information, and moderate limitation in concentration, persistence, and maintaining pace. ([12] at 122). However, the ALJ reviewed Dr. Williams's opinion and found that it was "not consistent with the medical evidence as a whole." ([11] at 25).

There are no treatment records indicating that Plaintiff was ever treated for depression or anxiety. Plaintiff consistently denied depression and anxiety during doctor's appointments. ([16]

at 205, 208, 211, 214, 219, 222, 230, 235, 238, 241). Additionally, Plaintiff was regularly screened for depression utilizing the Patient Health Questionnaire-2 (PHQ-2), and the results were negative. ([16] at 205, 213, 222, 237, 241, 244, 248).

Mental status exam findings also support the ALJ's conclusion that Plaintiff did not experience mental limitations. He was consistently noted as exhibiting normal mood and affect. ([16] at 8, 10). Exams show that neurological/psychiatric exams were within normal limits. ([16] at 14, 27, 124, 142, 161, 195, 258).

Plaintiff's daily activities also support the ALJ's RFC finding and conflict with Dr. Williams's opinion that Plaintiff experienced a moderate limitation in concentration, persistence, and maintaining pace. Plaintiff drives a car. He reported that he took care of his 8-year-old daughter including fixing her breakfast, helping her with homework, and driving her to and from school every day. ([15] at 59). He also indicated that he takes care of pets including feeding them and letting them in and out of the house. ([15] at 60). Plaintiff reported shopping for groceries and doing regular chores around the house. ([15] at 62). Plaintiff admitted to paying bills, counting change, handling a savings account, and using a checkbook. ([15] at 62). Plaintiff's wife reported that he regularly spent time with her and their daughter, does not need to be reminded to go anywhere, and goes to the store and his daughter's school on a regular basis. ([15] at 82). She also reported he had no attention span problems, was "good" at following both written and spoken instructions and that he got along "good" with authority figures. ([15] at 83-84).

During a consultative examination conducted by Dr. Golzari in February of 2018, Plaintiff's mental status was described as "oriented" and Dr. Golzari noted that he exhibited good general understanding. ([16] at 161). He noted that Plaintiff's memory was intact and that

Plaintiff's mood and behavior during the exam were normal. Dr. Reback, a state agency psychological consultant, found that Plaintiff had "no mental medically determinable impairments established" and found no psychological diagnosis. ([12] at 65).

On March 17, 2021, Plaintiff was noted as being oriented to person, place, and time, having good recent and remote memory, exhibiting a normal attention span and concentration and normal language, as well as a normal awareness of current events, past history, and vocabulary. ([16] at 258). On September 21, 2019, Plaintiff was examined by Dr. Chamberlain, who found Plaintiff to be alert with good eye contact. ([16] at 195). He found Plaintiff's mood appropriate and that he exhibited clear thought processes. Dr. Chamberlain found that his memory was normal, his concentration was good, and that Plaintiff was oriented to time, place, person, and situation. These normal findings support the ALJ's finding.

The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ's finding that Plaintiff had no mental limitations is clearly supported by substantial evidence.

### Issue 2: Whether the ALJ Properly Considered the Medical Opinion Evidence

Plaintiff argues that the ALJ failed to give proper consideration to the opinions of Dr. Chamberlain and Dr. Coleman. As previously discussed, when evaluating medical opinions, an ALJ is required to evaluate the persuasiveness of medical opinions by utilizing five factors, with supportability and consistency being the most important. 20 C.F.R. § 404.1520c(a)-(c). 20 C.F.R. § 404.1520c(c). However, the ALJ is not required to defer or give any specific evidentiary weight to any medical opinions. *See* 20 C.F.R. § 404.1520c(b)(2).

a. *Dr. Coleman*

Dr. John Coleman filled out a Medical Source Statement form in which he opined that the Plaintiff would have to rest for three hours during an eight-hour workday and that Plaintiff was limited in his ability to reach, finger, feel, and push. ([16] at 276, 280). The ALJ reviewed Dr. Coleman's reports but found that they were unpersuasive "because the limitations are not supported by his own clinical examination findings, nor other medical evidence, including the overall functional assessment by the doctors at Disability Determination Services." ([11] at 24).

The ALJ found it significant that Dr. Coleman claimed that Plaintiff had experienced these restrictions since 2012, yet Plaintiff's work history showed that he "worked 7 to 10 hour days, 6 days per week, frequently lifting between 50 and 100 pounds" during that time period. ([16] at 276). The ALJ found that Dr. Coleman's opinion was a "gross mischaracterization of the claimant's limitations" and "blatantly contrary" to the claimant's work history which undermined the validity of his assessment. ([11] at 24).

On February 12, 2021, Dr. Coleman examined Plaintiff and found he had full range or motion in his extremities and a normal gait. ([16] at 246). Plaintiff denied painful joints or weakness. ([16] at 245). On May 7, 2021, Plaintiff denied painful joints or weakness. ([16] at 249). Dr. Coleman's examination of Plaintiff showed full range of motion in all of his extremities and a normal gait. ([16] at 250).

As previously stated, the ALJ may reject opinions that are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers*, 238 F.3d at 621. The ALJ's finding that Dr. Coleman's opinion is unpersuasive is supported by substantial evidence.

  *b. Dr. Chamberlain*

Dr. Nicholas Chamberlain conducted a consultative examination of Plaintiff on September 21, 2019. ([16] at 192-98). The ALJ considered Dr. Chamberlain's report but found it only somewhat persuasive. The ALJ found that the "lack of a limitation for sitting and standing and a moderate limitation for walking and the need to use a cane" was persuasive as there is objective evidence of Plaintiff's degenerative disc disease and pain related to it. ([11] at 24). However, the ALJ stated "the postural limitations and lifting/carrying limitations are not persuasive because they are not supported by the examination findings in the report; they are contrary to the contemporary evidence of record; and they are not accepted generally by the doctors at [Disability Determination Services] who reviewed the assessments." ([11] at 24).

While Dr. Chamberlain concluded that Plaintiff "has severe limitations with lifting and carrying weight due to back pain", the ALJ found it significant that Dr. Chamberlain reported that Plaintiff was able to lift, carry, and handle light objects. ([16] at 196). Dr. Chamberlain also reported that Plaintiff could squat and rise and was able to get up and down from the exam table "with ease." ([16] at 196; [11] at 22). Dr. Chamberlain examined Plaintiff and found that he had full muscle strength throughout his upper extremities. ([16] at 195-96).

Additional evidence also supports the ALJ's finding. An x-ray of Plaintiff's shoulder on October 25, 2019, showed no acute fracture or evidence of dislocation, no joint effusion, and no suspicious osseous or soft tissue legions. ([16] at 200). On November 29, 2019, during a visit with Dr. Lewis, Plaintiff denied muscle aches and joint pains and an examination showed his neck supple with a full range of motion. ([16] at 205-06). On February 22, 2019, an examination showed his neck was supple with full range of motion and Plaintiff denied pain in his joints and muscle weakness. ([16] at 222). On November 30, 2019, Plaintiff visited Lackey Memorial Hospital and reported no weakness, swelling, or tenderness. ([16] at 230). A physical exam that

17

day stated that Plaintiff's neck was "normal", he was noted as moving all of his extremities well, his back was "non-tender", and he demonstrated a normal gait. Plaintiff was regularly reported as having full range of motion in his extremities. ([16] at 246, 250). On April 22, 2021, an examination of Plaintiff's shoulder by Dr. Coleman was normal. ([16] at 254). On March 17, 2021, a shoulder exam was normal. ([16] at 257).

Additionally, as previously noted, Plaintiff reported participating in a variety of activities including driving his daughter to and from school, pumping gas, cleaning, cooking, riding a lawnmower, and grocery shopping. During the hearing before the ALJ, Plaintiff reported putting the dishes away after his wife does the dishes including moving "everything from the sink into the cabinet." ([11] at 64). Plaintiff also reported emptying the trash can and taking it to the outside trash can. ([11] at 65). Three medical experts found that Plaintiff had no manipulative limitations. ([12] at 12-13, 27-28, 94-95, 108).

The ALJ's finding that Dr. Chamberlain's report was only somewhat persuasive is supported by substantial evidence. The ALJ properly discounted Dr. Chamberlain's opinion and provided his reasoning. The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Newton*, 209 F.3d at 455.

The Court recognizes that there is some evidence of record which supports Plaintiff's claims. This Court, however, does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. *Selders*, 914 F.2d at 617.

### Issue 3: Plaintiff's Statements as to His Symptoms and Their Functionally Limiting Effects

Plaintiff claims that "all" of the state agency medical consultants found that Plaintiff's medically determinable impairments could reasonably be expected to produce his pain or other

symptoms and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the medical evidence alone. ([18] at 14-15). Plaintiff argues that the ALJ "never referred to the unanimous opinions of the State Agency medical consultants on this issue, nor gave reasons for rejecting their unanimous conclusions." ([18] at 16). Plaintiff asserts that the ALJ's failure to refer to the state agency medical consultants' opinions on this issue is error.

However, it is not clear what these statements mean in a vacuum as presented by Plaintiff. While each state agency medical consultant found that Plaintiff's medically determinable impairments could reasonably be expected to produce his pain or other symptoms and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the medical evidence alone—after reviewing the record as a whole—each found that Plaintiff was capable of performing either light or sedentary work. ([12] at 12, 27, 41-42, 52-53, 65, 78, 93, 106, 120, 133). Additionally, the ALJ applied the proper standards to evaluate Plaintiff's statements about his pain and his findings are supported by substantial evidence.

Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain and other symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. First, an ALJ considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. If an ALJ determines that such an impairment is present, the ALJ determines the "intensity, persistence, or limiting

effect" of the alleged symptoms.  An ALJ considers the record as a whole, including both objective and subjective evidence.[11]

Although an ALJ should consider a claimant's subjective complaints, a claimant's own statements regarding his pain and symptoms are not determinative of disability status. 20 C.F.R. § 404.1529.  "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

In this case, the ALJ made the following determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

([11] at 18).

In making this determination, the ALJ considered Plaintiff's medical records and other evidence, such as Plaintiff's daily activities. The ALJ found that the evidence of record (including Plaintiff's daily activities) was more persuasive than Plaintiff's subjective complaints, a determination within the purview of the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("Moreover, a factfinder's evaluation of the credibility of subjective complaints is

---

[11] In addition to objective medical evidence, an ALJ should consider several other categories of evidence, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

entitled to judicial deference if supported by substantial record evidence."). The ALJ gave sufficient reasons for his findings, and the ALJ's decision is supported by substantial evidence.

***Issue 4: Existence of Work in Significant Numbers***

At step five of the sequential analysis, the ALJ considered whether jobs existed in significant numbers in the national economy that Plaintiff could perform. ([11] at 27-28). The ALJ enlisted the assistance of a vocational expert ("VE"). To determine the extent to which Plaintiff's limitations eroded the occupational base, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE testified that such an individual would be able to perform light, unskilled jobs such as cashier II (with 569,000 jobs in the national economy), furniture rental clerk (with 58,000 jobs in the national economy), and office helper (with 13,000 jobs in the national economy), which are listed in the Department of Labor's Directory of Occupational Titles ("DOT"). ([11] at 28). The VE also listed sedentary jobs that Plaintiff would be able to perform.[12]

*a. VE's Testimony*

Plaintiff claims the ALJ erred at step five by relying on the VE's testimony. Plaintiff argues that jobs at the light exertional level require standing and walking as much as 6 hours in an 8-hour workday. The ALJ limited Plaintiff to standing and/or walking for only 4 hours in an 8-hour workday, and Plaintiff argues that the VE did not include this limitation when determining which jobs Plaintiff could perform. ([11] at 17).

---

[12] *See supra*, n. 5. Plaintiff makes various arguments in his brief related to the sedentary jobs that were proposed by the ALJ. Because the VE testified that there are a significant number of jobs that exist at the light exertional level that Plaintiff can perform, the undersigned will not delve into the arguments that do not affect the substantive rights of the Plaintiff. *See Audler*, 501 F.3d at 448.

Although the SSA relies primarily on the DOT for "information about the requirements of work in the national economy," the SSA turns to VEs and vocational specialists "to resolve complex vocational issues." (SSR 00-4p, 2000 WL 1898704, at *2). The ALJ is required to ask a VE if her testimony about the requirements of a job conflicts with information in the DOT and, if it does, to obtain a reasonable explanation for the conflict before relying on the VE's testimony instead of the DOT information. *See* SSR 00–4p, 2000 WL 1898704, at **2, 4. Absent an unresolved conflict, the ALJ may rely on the VE's testimony as substantial evidence of an individual's ability to perform certain jobs as long as the ALJ posed a hypothetical question that incorporated all of the impairments that the ALJ recognized as supported by the record and the claimant was given an opportunity to correct errors or omissions in the hypothetical question. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); SSR 00–4p, 2000 WL 1898704, at *4.

The ALJ recognized the conflict between the definition of jobs at the light exertional level and Plaintiff's RFC during the hearing. He then had the VE explain why her testimony varied from the DOT:

> ALJ:   --if the DOT doesn't specifically allow for standing and walking at light jobs below six hours in an eight-hour day, then what are you basing your testimony on to say that these jobs that you've identified at the light [exertional] level could nevertheless be performed?
>
> VE:    Oh, that's based on my professional education, training, and experience.

([11] at 83). Counsel for Plaintiff reviewed the VE's curriculum vitae and stated he had "no objection" to her testifying. ([11] at 73).

While Plaintiff argues that a "vague reference to education, training, and experience" is insufficient to resolve conflicts between the VE's testimony and the SSA regulations, Plaintiff did not develop this issue at the hearing. The Fifth Circuit has held:

> all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) (declining to reverse the Commissioner's denial of SSA benefits where the VE testified that a claimant with one arm would be able to perform particular jobs that required manual dexterity with the one arm). Additionally, the ALJ complied with SSR 00-4p by obtaining a reasonable explanation for the conflict and explained how the conflict was resolved in his written decision. ([11] at 28). Moreover, the Fifth Circuit has held that when a VE testifies that there are numerous jobs in the national economy that a claimant can perform and the claimant fails to offer contrary evidence or cross-examine the VE, "the claimant fails to meet his burden of proof under the fifth step of the disability analysis." *Perez v. Barnhart*, 415 F.3d 457, 464, (5th Cir. 2005). [13] Accordingly, substantial evidence supports the ALJ's reliance on the VE's testimony.

    b. Cane Usage

Plaintiff also argues that because the ALJ assigned an RFC with a cane, that Plaintiff would not have the ability to work at the light exertional level. [14] However, Plaintiff cites to no legal authority that holds that an individual who relies on a cane cannot perform *any* light work.

---

[13] The burden of proof is on the Commissioner at the final step. The Commissioner must demonstrate that the claimant's impairment does not prevent him from performing other work. *Perez,* 415 F.3d at 461. However, "[o]nce the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id*. (quoting *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir.2000)).

[14] Even though the ALJ assigned an RFC with a cane, the record shows that Plaintiff did not regularly use one. ([11] at 55; [16] at 89, 161, 246, 250, 257).

Counsel for Plaintiff made this argument at the hearing, and the ALJ directed counsel to provide any direct Social Security authority on this issue to him. ([11] at 84-85). The ALJ also addressed this issue in a footnote in his opinion and noted that Plaintiff's counsel offered "no direct authority supporting this proposition." ([11] at 17). The VE properly considered whether a person who relied on a cane would be able to perform these jobs and concluded that he could. The ALJ was entitled to rely on the VE's opinion as substantial evidence.

Additionally, as argued by the Commissioner, the DOT descriptions of light jobs identified by the VE do not require the use of both hands for lifting. *See* Cashier II, DOT #211.462-010, 1991 WL 671840; Furniture Rental Clerk, DOT # 295.357-018, 1991 WL 672589. Other decisions, including from the Fifth Circuit, make clear that cane use does not categorically preclude a claimant from performing light work. *See, e.g., Britton v. Saul*, 827 F. App'x 426, 429 (5th Cir. 2020); *Mosely v. Kijakazi*, 2022 WL 3093294, at *2 (N.D. Miss. Aug. 3, 2022) (finding that there was no categorical erosion of jobs in the light work category for a person who required use of a cane).

*c. Sit-Stand Option*

Plaintiff also argues that he would be unable to perform the job of office helper as it does not have a sit-stand option. ([18] at 17-18). Plaintiff claims that the ALJ failed to carry his burden at step five to show that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

The ALJ addressed this conflict at the hearing with the VE. The VE stated "office helper…does not have a sit/stand option on a volunteer basis. Although, an office helper, you know, one of their tasks are going to be sitting; some of them are already standing, walking around, photocopying. Some of them are going to be sitting, filing, that sort of thing." ([11] at

83). The VE concluded that based on her "professional education, training, and experience" someone with Plaintiff's RFC would be able to perform the job of office helper. *Id*. The ALJ then relied on the VE's testimony to support his finding that jobs exist in significant numbers that Plaintiff can perform. Plaintiff did not offer contrary evidence or cross-examine the VE related to this issue as he was permitted to do. Accordingly, the ALJ was entitled to rely on the VE's testimony.

Moreover, 20 C.F.R. § 404.156 provides that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." But, "[i]solated jobs that exist in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." *See* 20 C.F.R. § 404.156. "[W]ork exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in other regions of the country." *Lirley v. Barnhart*, 124 Fed. Appx. 283, 283-84 (5th Cir. 2005).

The Fifth Circuit has not set a specific number of jobs that it deems to be "significant numbers." However, various courts, including the Fifth Circuit, have held that job numbers significantly lower than those presented here, are nevertheless significant. *See Lirley*, 124 Fed. Appx. at 283-84 (holding that 50,000 jobs in the national economy are significant); *Charles v. Saul*, 2021 WL 1092664, at *7 (E.D. La. Mar. 5, 2021) (collecting cases); *Duckworth v. Astrue*, 2010 WL 2899346, at *5 (N.D. Tex. June 21, 2010) (noting that "30,000 jobs in the national economy is considered significant"); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (finding that 32,000 jobs in the national economy are significant); *Lynn v. Colvin*, 637 Fed.

Appx. 495, 499 (10th Cir. 2016) (finding that 24,900 jobs in the national economy are significant).

Even if the Court were to rule out the job of office helper, the Fifth Circuit does not require procedural perfection, but requires the Plaintiff to show that he was actually prejudiced by the mistake. *See Audler*, 501 F.3d at 448. Here, the VE testified that someone with the same RFC as Plaintiff could perform the jobs of cashier II (with 569,000 jobs in the national economy) and furniture rental clerk (with 58,000 jobs in the national economy) which equates to 627,000 jobs in the national economy that Plaintiff could perform. Therefore, the ALJ's conclusion that jobs exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence in the form of the VE's testimony.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party,

26

except on the grounds of plain error, from attacking on appeal unobjected to proposed factual

findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

      This the 23rd day of January, 2023.

                            s/Michael T. Parker
                            UNITED STATES MAGISTRATE JUDGE